UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILFREDO TORRES,

               Plaintiff,

-against-

CITY OF NEW YORK; CYRUS VANCE; THE
LEGAL AID SOCIETY; NEW YORK CITY
HEALTH & HOSPITALS; THE BLACKSTONE
GROUP; CENTRAL INTELLIGENCE
AGENCY; U.S. DEPARTMENT OF JUSTICE,

               Defendants.

19-CV-6332 (CM)

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff, appearing *pro se*, brings this action under the Court's federal-question jurisdiction. By order dated August 21, 2019, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. For the reasons discussed below, the Court grants Plaintiff leave to file an amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks and citation omitted).

## BACKGROUND

A. *Torres v. City of New York*, **1:16-CV-2362 ("*Torres I*")**

On March 29, 2016, Plaintiff filed *Torres I*, a *pro se* action in which he initially named the New York City Police Department ("NYPD"), the New York City Department of Buildings ("DOB"), and Bellevue South Associates ("BSA") (his landlord) as defendants. *Torres I* is pending before Judge Abrams. In the latest complaint that he filed in *Torres I*, Plaintiff sues BSA, the City of New York, New York City police officers, a DOB employee, New York City Fire Lieutenants and a Firefighter, the New York City Hospital for Joint Diseases ("HJD"), a physician, and Bellevue Hospital. (ECF 1:16-CV-2362, 291.)

Plaintiff's claims in *Torres I* arise from the following alleged events: (1) since 2008, Plaintiff has been injured when breathing in the gases and other pollutants emanating from a pizza oven and chimney in a restaurant in a BSA-owned building next to Plaintiff's apartment building, (2) DOB has responded inadequately to Plaintiff's complaints about the oven and chimney, (3) on September 28, 2015, NYPD officers broke down Plaintiff's apartment door with the assistance of a BSA employee and handcuffed Plaintiff, (4) on April 28, 2016, members of

2

the New York City Fire Department ("FDNY"), acting on a report by an HJD physician, broke down Plaintiff's apartment door; NYPD officers then arrived and handcuffed Plaintiff and took him to Bellevue, where Bellevue staff restrained and medicated him without his consent.

**B.**     *Torres v. NYC Police Dep't*, **1:16-CV-3437 ("*Torres II*")**

On May 9, 2016, Plaintiff filed another *pro se* action, *Torres II*, in which he sues the NYPD and BSA. (ECF 1:16-CV-3437, 2.) *Torres II* is also pending; Judge Abrams has accepted *Torres II* as related to *Torres I*. Plaintiff's claims in *Torres II* also arise from the September 28, 2015 and April 28, 2016 events alleged in *Torres I*.

**C.**     *Torres v. NYC Health & Hospitals*, **1:18-CV-4665 ("*Torres III*")**

On May 25, 2018, Plaintiff filed yet another *pro se* action, *Torres III*, in which he sues NYC Health + Hospitals (formerly known as the New York City Health and Hospitals Corporation) ("HHC") and members of the Bellevue staff. (ECF 1:18-CV-4665, 2.) *Torres III*, like *Torres I* and *Torres II*, is pending before Judge Abrams, as she has also accepted it as related to *Torres I*. Plaintiff's claims in *Torres III* arise from the same events alleged in *Torres I* and *Torres II*.

**D.**     *Torres v. The Blackstone Grp.*, **1:18-CV-6434 ("*Torres IV*")**

On July 16, 2018, Plaintiff filed still another *pro se* action, *Torres IV*, in which he sued the Blackstone Group. Plaintiff alleged in his *Torres IV* amended complaint that BSA sold Plaintiff's apartment building to the Blackstone Group in December 2016. (ECF 1:18-CV-6434, 7, p. 8-9.) In his *Torres IV* amended complaint, Plaintiff asserted claims arising from the same events alleged in *Torres I*, *Torres II*, and *Torres III*. Judge Abrams accepted *Torres IV* as related to *Torres I*. And in a Memorandum and Order dated September 3, 2019, Judge Abrams granted the Blackstone Group's motion to dismiss *Torres IV* for failure to state a claim on which relief may be granted but declined to consider any of Plaintiff's state-law claim under the Court's

3

supplemental jurisdiction. *Torres IV*, No. 18-CV-6434, 2019 WL 4194496 (S.D.N.Y. Sept. 3, 2019) (notice of appeal filed Oct. 3, 2019).

**E.     The present action**

In the present action, Plaintiff sues the City of New York, New York County District Attorney Cyrus Vance, Jr., the Legal Aid Society, HHC, the Blackstone Group, the Central Intelligence Agency ("CIA"), and the United States Department of Justice ("DOJ"). The present complaint's statement of claim begins by stating that:

> The government of the United States finally accepts the destruction of New York City's World Trade Center on September 11, 2001 was an inside job of controlled demolition, part of the New World Order's agenda to create a fake "war on terror"; multiply the military and national security budgets; trash the U.S. Constitution; activate the totalitarian Patriot Act-Foreign Intelligence Surveillance Act (FISA); a secret and omnipotent Court called Foreign Intelligence Surveillance Court (FISC); militarize all police agencies to condition and slaughter civilians; expand the federal hit-list of over 3-million individuals targeted for persecution or death; and take total control of the news-media.

(ECF 2, p. 8.) The present complaint then recounts the same events of September 28, 2015, and April 28, 2016, that underlie *Torres I*, *Torres II*, *Torres III*, and *Torres IV*.[1]

Plaintiff alleges the following additional facts in the present complaint: In *Torres I*, he requested that Judge Abrams allow him to additionally name the Federal Bureau of Investigation ("FBI") and DOJ as defendants. (*Id.* p. 11); (*see also Torres I*, ECF 1:16-CV-2362, 316, p. 3) (letter from Plaintiff to Judge Abrams requesting to add FBI and DOJ as defendants in *Torres I*).[2] The day after he filed that request, "the CIA-FBI-NYPD Unit fabricated against [him]

---

[1] Plaintiff refers to those who entered his apartment on September 28, 2015, and on April 28, 2016, as employed by the "Central Intelligence Agency-Federal Bureau of Investigation-New York City Police Department Unit ('CIA-FBI-NYPD Unit')." (ECF 2, p. 8.)

[2] It does not appear that Judge Abrams has issued a decision on that request.

4

a Family Court complaint for aggravated harassment" that the Family Court dismissed. (ECF 2, p. 11.)

On December 13, 2018, "the CIA-FBI-NYPD Unit[] and Elijah Smalls," a BSA employee and *Torres I* defendant, "were turned[]down to enter [Plaintiff's] apartment, used a sledge hammer trying to break the door, and made threats such as: "YOU PAID FOR THE DOOR, AND WILL HAVE TO PAY AGAIN." (ECF 2, p. 12 (emphasis in original).)

Plaintiff's attorney then informed him that a "related criminal case" had been brought against him; he surrendered to the police on December 21, 2018, but he "was released by a Judge." (*Id.*) On that same date, "the CIA-FBI-NYPD Unit" "signed and fabricated" a criminal complaint against him. (*Id.*) A court-appointed criminal defense attorney from the Legal Aid Society advised him to plead guilty because "'it's only a misdemeanor, and the Judge will not give you jail time.'" (*Id.* p. 12-13.) Plaintiff made unspecified complaints to his criminal defense attorney's supervisors and the President of the Legal Aid Society, but his complaints were ignored. That criminal case against him was dismissed.

On February 20, 2019, "the CIA-FBI-NYPD Unit" returned to Plaintiff's apartment. When he denied them access, they threatened him by saying, "'IF YOU DON'T OPEN THE DOOR WE WILL TELL YOUR NEIGHBORS THAT YOU ARE A RAPIST AND A PEDOPHILE.'" (*Id.* p. 13 (emphasis in original).) Two days later, Plaintiff, a woman who accused Plaintiff of a crime, the District Attorney, and a lawyer from the Legal Aid Society met at Plaintiff's apartment so that the woman could pick up her belongings. They agreed that the police would not be there. But Plaintiff's Legal Aid Society lawyer and the District Attorney "set a trap to allow the CIA-FBI-NYPD Unit to search [Plaintiff's] apartment; five (5) of them invaded [his] apartment when the woman walked in; conducted another warrantless raid; [and]

arrested [him] on a bogus charge of violating an Order of Protection." (*Id.* p. 14.) They also removed property. And two members of the unit shackled Plaintiff and took him to Bellevue so that he could undergo an involuntary psychiatric examination while the other members of the unit continued to search his apartment. On that same date, members of the unit filed a false criminal complaint against Plaintiff, but the underlying criminal case was dismissed. Plaintiff's Legal Aid Society attorney and his supervisors "acted with indifference." (*Id.* p. 14.)

Plaintiff asserts that the defendants have violated his rights under the United States and New York State Constitutions. He seeks $30,000,000 in damages.

## DISCUSSION

**A.**     **Claims about the events of September 11, 2001**

The Court must dismiss Plaintiff's claims about the events of September 11, 2001 as frivolous. Even when read with the "special solicitude" due *pro se* pleadings, *Triestman*, 470 F.3d at 474-75, Plaintiff's claims about those events rise to the level of the irrational, and there is no legal theory on which he can rely. *See Denton*, 504 U.S. at 33; *Livingston*, 141 F.3d at 437. The Court therefore dismisses Plaintiff's claims about those events as frivolous. 28 U.S.C. § 1915(e)(2)(B)(i).

**B.**     **Claims about the events of September 28, 2015, and April 28, 2016**

The Court must also dismiss Plaintiff's claims about the events of September 28, 2015, and April 28, 2016. "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). "This is because a plaintiff has 'no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (quoting *Curtis*, 226 F.3d at 139). For this rule against duplicative litigation to be invoked, "the case must

be the same." *Id.* (quoting *United States v. The Haytian Rep.*, 154 U.S. 118, 124 (1894)) (internal quotation marks omitted). "[T]here must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." *Id.* (quoting *The Haytian Rep.*, 154 U.S. at 124) (internal quotation marks omitted).

Plaintiff asserts in this action many of the same claims that arise from the events of September 28, 2015, and April 28, 2016, that he has asserted in *Torres I*, *Torres II*, and *Torres III* against the same defendants named in those actions or against individuals and entities that are in privity with those defendants. He filed the present action after he filed *Torres I*, *Torres II*, and *Torres III*, but those actions are still pending. Accordingly, since no useful purpose would be served by litigating claims in this action arising from the events of September 28, 2015, and April 28, 2016, that Plaintiff has been litigating in *Torres I*, *Torres II*, and *Torres III*, the Court dismisses those claims without prejudice to Plaintiff's claims in *Torres I*, *Torres III*, and *Torres III*.

**C.     Sovereign immunity**

The doctrine of sovereign immunity bars federal courts from hearing all suits against the United States of America and federal agencies, such as CIA and DOJ, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency . . . is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal government officers or employees acting

7

within the scope of their office or employment. *See* 28 U.S.C. § 1346(b)(1). But a plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015).

Before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). If no final written determination is made by the appropriate federal government entity within six months of the date of the claimant's filing, the claimant may bring an FTCA action in a federal district court. *See id.* This requirement is jurisdictional and cannot be waived. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

Here, Plaintiff does not allege any facts demonstrating that he has filed an administrative claim under the FTCA with a federal government entity for damages. Nor does he allege that he has subsequently received a final written determination before bringing this action, or that it has been more than six months since he has filed such an administrative claim. Accordingly, the Court dismisses Plaintiff's claims against DOJ and CIA as frivolous under the doctrine of sovereign immunity. *See* § 1915(e)(2)(B)(i), (iii); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

**D.     Cyrus Vance, Jr.**

The Court construes Plaintiff's complaint as asserting claims of federal constitutional violations under 42 U.S.C. § 1983 against New York County District Attorney Cyrus Vance, Jr., arising from his prosecution of Plaintiff following Plaintiff's arrests. But the Court must those claims. Prosecutors are immune from civil suits for damages in their individual capacities for

acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it") (internal quotation marks and citation omitted). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

Plaintiff's § 1983 claims against Vance arise from Vance's prosecution of Plaintiff. The Court therefore dismisses Plaintiff's § 1983 claims against Vance under the doctrine of prosecutorial immunity and because such claims are frivolous. *See* § 1915(e)(2)(B)(i), (iii); *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011) (claims dismissed for prosecutorial immunity are frivolous under the *in forma pauperis* statute); *Montero*, 171 F.3d at 760.

### E. The Legal Aid Society & the Blackstone Group

The Court also construes Plaintiff's complaint as asserting § 1983 claims against the Legal Aid Society and the Blackstone Group. But the Court must dismiss those claims as well. A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." Private parties are therefore not generally liable under the statute. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . .") (internal quotation marks and citation omitted).

Absent special circumstances suggesting concerted action between a private legal aid organization and a state representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), the actions of such an organization do not constitute the degree of state involvement sufficient to state a claim against it under § 1983. *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).

The Legal Aid Society and the Blackstone Group are private organizations. And Plaintiff has failed to allege any facts suggesting that either of those entities acted as a state actor. The Court therefore dismisses Plaintiff's § 1983 claims against the Legal Aid Society and the Blackstone Group for failure to state a claim on which relief may be granted.[3] *See* § 1915(e)(2)(B)(ii).

**F.     The City of New York & HHC**

The Court further construes Plaintiff's complaint as asserting § 1983 claims against the City of New York and HHC. When asserting such claims against the City of New York or HHC, is not enough for a plaintiff to allege that one of the City's or HHC's employees or agents engaged in some wrongdoing. A plaintiff must show that the municipality or HHC itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436

---

[3] Plaintiff seems to allege that his Legal Aid Society attorney conspired with District Attorney Vance when they "set a trap to allow the CIA-FBI-NYPD Unit to search [his] apartment." (ECF 2, p. 13.) But because these allegations are vague and without supporting facts, they fail to state a claim of conspiracy under either § 1983 or 42 U.S.C. § 1983(5). *See* § 1915(e)(2)(B)(ii); *Wang v. Miller*, 356 F. App' x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Ciambrello*, 292 F.3d at 324-25; *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

10

U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality or HHC, the plaintiff must allege facts showing (1) the existence of a municipal or HHC policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted); *Rookard v. Health & Hosp. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (applying standard for § 1983 municipal liability to HHC).

Plaintiff's remaining claims against the City of New York and HHC appear to arise from the alleged actions of the City's and HHC's employees in December 2018 and February 2019. In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint in which he alleges facts that suggest that a policy, custom, or practice of the City of New York or HHC caused a violation of his federal constitutional rights and that such a violation arose from events that occurred in December 2018 or February 2019.

### G. Personal involvement of individuals

To state a claim under § 1983, a plaintiff must allege facts showing an individual's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). An individual can be personally involved in a § 1983 violation if:

> (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under

which unconstitutional practices occurred, or allowed the continuance of such a
policy or custom, (4) the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts, or (5) the defendant exhibited
deliberate indifference to the rights of [the plaintiff] by failing to act on
information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[4]

Other than Vance, Plaintiff has not named any individuals as defendants who were involved in the alleged events of December 2018 or February 2019. The Court therefore grants Plaintiff leave to amend his complaint to assert § 1983 claims against those individuals. He must name those individuals as defendants and allege facts showing how those individuals were personally involved in violations of his constitutional rights in December 2018 or February 2019.

## LEAVE TO AMEND

The Court grants Plaintiff leave to file amended complaint about his § 1983 claims that arise from the alleged events of December 2018 or February 2019, and that are against the City of New York, HHC, and any individuals. First, Plaintiff must name among the defendants in the caption[5] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended

---

[4] "Although the Supreme Court's decision in [*Iqbal*, 556 U.S. 662] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," the Second Circuit has not yet examined that issue. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

[5] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the amended complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

complaint.[6] The naming of "John Doe" or "Jane Doe" defendants, however, does *not* toll the three-year statute of limitations period governing Plaintiff's § 1983 claims and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" or "Jane Doe" defendants and amending his complaint to include the identity of any "John Doe" or "Jane Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case, including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: *who* violated his federally protected rights; *what* facts show that his federally protected rights were violated;

---

[6] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty on August 31, 2018, in the Sullivan Correctional Facility clinic, during the 7 a.m. to 3 p.m. shift."

*when* such violation occurred; *where* such violation occurred; and *why* Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint. Plaintiff must not reassert, in his amended complaint, claims that the Court has dismissed in this order.

## CONCLUSION

The Court directs the Clerk of Court to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket.

The Court dismisses Plaintiff's claims except for those against the City of New York and NYC Health + Hospitals.

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-6332 (CM). An amended complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss Plaintiff's remaining claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Court also directs the Clerk of Court to docket this order as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

SO ORDERED.

Dated: November 13, 2019
        New York, New York

                                                COLLEEN McMAHON
                                          Chief United States District Judge