UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILFREDO TORRES,

        Plaintiff,

 – against –

CITY OF NEW YORK; NEW YORK HEALTH &
HOSPITALS; POLICE LIEUTENANT NEIL VERAS;
POLICE OFFICER PATRICIA DE JESUS, (*Shield
#1305)*, DIOASKY PENA *(Shield #10240)*, MATEASZ
HADER, *(Shield #9149)*, and DANIEL PEARLES
(*Shield #15167)*; ARKAPRAVA DEB, M.D.; and
STEVEN LASLEY, M.D.,

        Defendants.

**OPINION AND ORDER**
19 Civ. 6332 (ER)

Ramos, D.J.:

  Wilfredo Torres, *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his federal and constitutional rights when they entered his apartment on February 27, 2019 and transported him to the NYC-HHC Bellevue Hospital Center. Pending before the Court is the motion of New York City Health and Hospitals ("NYCHH") and Steven Issley, M.D.[1] (the "Hospital Defendants") to dismiss Torres' claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Hospital Defendants further ask that the Court dismiss the claims against defendant Arkaprava Deb, M.D, pursuant to Rule 4(m). Also before the Court is Torres' motion for sanctions and to disbar prior counsel for the Hospital Defendants, Doreen Dufficy. For the reasons set forth below, the Hospital Defendants' motion is GRANTED, and Torres' motion is DENIED.

---

[1] As discussed herein, the Second Amended Complaint ("SAC") mistakenly names "Steven Lasley" as a defendant. The defendant's actual name is Steven Issley.

## I.   FACTUAL BACKGROUND[2]

Torres' claims are based on events that occurred at his New York City apartment and at NYC-HHC Bellevue Hospital Center ("Bellevue") between February 27 and February 28, 2019.[3] Doc. 81 at 5.  On February 27, 2019, New York Police Department ("NYPD") Lieutenant Neil Veras—along with NYPD Officers Patricia de Jesus, Dioasky Pena, Daniel Pearles, and Mateusz Hader (together with Veras the "NYPD Defendants")—carried out a warrantless raid of Torres' apartment and arrested him on a misdemeanor charge.  *Id.* at 12.  During the raid, Veras made comments such as "Torres files lawsuits against everyone," and "I will give him a Costco certificate to throw away all the junk in this apartment."  *Id.*  Veras ordered some of the police officers to transport Torres to the 13th Precinct of the New York City Police Department.  *Id.* Veras and de Jesus stayed behind, allegedly "searching and ransacking [Torres'] apartment."  *Id.* Torres was subsequently taken to Bellevue's psychiatric ward, back to the police precinct, to court,[4] back to Bellevue, then back to the police precinct, and ultimately back to court where an unidentified judge released him.  *Id.*  Torres describes the events as "32 hours of torture."  *Id.*

---

[2] The following facts are based on the SAC, which the Court accepts as true and construes in the light most favorable to Torres.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

[3] The SAC references another action brought by Torres before Judge Ronnie Abrams of this District, *Wilfredo Torres v. New York City Police Department, et al.*, No. 16 Civ. 2362 (RA) (KNF).  According to the SAC, a 2015 raid on Torres' apartment by CIA terrorists formed the basis for that lawsuit.  *See* Doc. 81 at 11.  Judge Abrams, however, dismissed that suit on March 31, 2021.

The SAC describes other events predating the February 27 to February 28, 2019 period.  For example, Torres alleges that on April 28, 2016, "CIA terrorists" broke into his apartment, performed a warrantless raid, and transported him to Bellevue Hospital, where he claims to have been "assaulted, tortured, involuntarily sedated, and subject to numerous invasive medical procedures[,] including x-rays [and] drawing blood and urine."  *Id.* at 11.  He also contends that on December 13, 2018 and on February 20, 2019, Veras and de Jesus attempted to break into his apartment and made threats such as: "We will tell all your neighbors that you are a rapist and a pedophile."  *Id.* at 11–12.

[4] The SAC does not identify the court Torres was brought before.  *Id.* at 10–12.

He separately claims to be erroneously included on the United States government's terrorist list and that Bellevue "is the center where the CIA take[s] its victims to be tortured." *Id.* at 10–11.

Torres alleges that defendants' conduct violated his federal and constitutional rights pursuant to 42 U.S.C. § 1983. *See id.* at 2 (stating claims for illegal search, kidnapping, false arrest, false imprisonment, malicious prosecution, terrorism, and "use of a federally-funded medical facility for torture purposes"). *Id.* at 2. As a result of these alleged violations, Torres contends that he has suffered post-traumatic stress disorder; heart disease; and an exacerbation of asthma and a pre-existing back injury, both of which required treatment and medication. *Id.* at 6. He seeks judgment in the amount of $30 million, as well as injunctive relief to enjoin the Hospital Defendants from "allowing its facilities [to] torture . . . victims of the CIA."[5] *Id*. at 6.

## I. PROCEDURAL HISTORY

Torres brought this action on July 8, 2019. Doc. 2. On February 7, 2020, the Court ordered counsel for the City and NYCHH to identify an unnamed defendant doctor pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). Doc. 14. On September 4, 2020, NYCHH identified the defendant doctor as Arkaprava Deb, M.D. Doc. 73. On September 10, 2020, NYCHH provided a supplemental response, confirming that Deb's address for service was Bellevue Hospital, 462 First Avenue, New York, New York, 10016. Doc. 76.

On October 9, 2020, Torres filed the SAC adding an additional defendant doctor, Steven "Lasley." Doc. 81. On January 15, 2021, Lasley's summons was returned unexecuted because Bellevue had no record of him. Doc. 113.

The City of New York answered the SAC on October 23, 2020. Doc. 85. Veras answered the SAC on January 19, 2021. Doc. 112.

---

[5] Neither Issley nor Deb are mentioned in the facts section of the SAC. *Id.*

3

On January 25, 2021, Torres requested that the Court issue an order of service.  Doc. 114. On January 28, 2021, the Court granted Torres' request as to Deb and "Lasley," noting that as of that date, neither had been served.  Doc. 120.  On February 2, 2021 the Court, noting that "Lasley's" summons had been returned unexecuted and therefore that the January 28 order could not be fulfilled, stayed that order and issued a second *Valentin* order, directing NYCHH to identify the second doctor who Torres had attempted to identify as "Lasley."  Doc. 124.

On February 17, 2021, Deb's summons was returned unexecuted because the process server was first informed that the "employee was at Jacobi Hospital," and then was told at Jacobi Hospital that "employee has not been employed since April 2019."  Doc. 125.

On February 26, 2021, NYCHH identified the second defendant doctor as Steven *Issley*. Doc. 126.  NYCHH confirmed the first defendant doctor to be Arkaprava Deb and the address for service for both doctors to be Bellevue Hospital, 462 First Avenue, New York, New York 10016.  *Id.*  NYCHH served its response to the Court's February 2, 2021 *Valentin* order on Torres.  Doc. 127.

On October 27, 2021, the Court issued a further order directing service upon Deb and Issley, and ordering the defendants who had been served to answer.  Doc. 144.  The order listed as the address for service upon Deb and Issley the Bellevue Hospital address that NYCHH had confirmed to the Court was the correct address for service.  *See id.*  Additionally, the order granted the request of the City to stay this matter as to Pearles because of his military leave.[6]  *Id.*

On October 28, 2021, the Court extended NYCHH's deadline to answer the complaint to four weeks after the date of service on Deb and Issley.  Doc. 147.

---

[6] This stay has not yet been lifted.

On December 17, 2021, the Police Officers de Jesus, Pena, and Hader answered the SAC. Doc. 150.

On February 8, 2022, returns of service as to both doctors were once again returned unexecuted. Docs. 152, 153. The returns of service show that the U.S. Marshals attempted to serve Deb in person at Bellevue Hospital, 462 First Avenue New York, New York 10016, but "Defendant does not work at hospital," and also mailed the summons on October 28, 2021, to no response. Doc. 152. Likewise, the U.S. Marshals attempted to serve Issley in person at Bellevue Hospital, 462 First Avenue, New York, New York 10016, and also mailed the summons on October 28, 2021, to no response. Doc. 153.

On February 15, 2022, the Court directed NYCHH to either accept service on behalf of Deb and Issley or to provide a status report as to service. Doc. 154. Three days later, on February 18, 2022, NYCHH provided the Court with Deb's last known address and accepted service on behalf of Issley. Doc. 155. On February 22, 2022, the Court issued an order directing the Clerk of Court to issue amended summonses as to Deb; complete USM-285 forms for service on Deb; and to deliver all documents necessary to complete service on Deb to the U.S. Marshals, using the address provided by NYCHH. Doc. 156. The Clerk of Court did so that same day. The Court further ordered that service upon Deb was to be made no later than "**March 7, 2022**." *Id.* (emphasis in the original). To date, Deb has not been served and has not appeared.

On June 2, 2022, Doreen Dufficy of the law firm Heidell, Pittoni, Murphy & Bach, LLP (the "Firm"), filed a motion dismiss the SAC's claims against her clients, the Hospital Defendants, for failure to state a claim. Doc. 162. The motion also stated that the SAC's claims against Deb should also be dismissed, pursuant to Federal Rule of Procedure 4(m). On June 17,

2022, Torres moved for sanctions against the Firm and to disbar Dufficy for filing the motion to dismiss. Doc. 168.

On January 4, 2023, the Court granted the request for David Dince of the law firm Aaronson Rappaport Feinstein & Deutsch, LLP to be substituted as counsel of record on behalf of the Hospital Defendants in place of Dufficy and her co-counsel, Gabrielle DeYoung. Docs. 187, 188.

## II.   STANDARD

### a.   12(b)(6):  Failure to State a Claim

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F.Supp.2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

The same standard applies to motions to dismiss for *pro se* plaintiffs. *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, 2017 WL 1194686, at *5 (S.D.N.Y. 2017) (citing *Zapolski v. Fed. Repub. of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011)). However, a court is to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

### III. DISCUSSION

#### a. Motion to Dismiss

##### 1. Deliberate Indifference to Serious Medical Needs[7]

In order to establish an Eighth or Fourteenth Amendment violation resulting from inadequate medical care, an individual must demonstrate "deliberate indifference to [his] serious

---

[7] The SAC does not expressly state a claim against the Hospital Defendants for deliberate indifference towards Torres' medical needs. However, the Hospital Defendants, construing the FAC liberally, respond to that claim as it is reasonably suggested by the SAC. *Triestman*, 470 F.3d at 474.

7

medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  A claim for deliberate indifference to a serious medical condition consists of two elements:  the first objective, the second subjective.  First, "the alleged deprivation of adequate medical care must be sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) ("Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eight Amendment violation.").  Second, "the charged official must act with a sufficiently culpable state of mind."  *Fulmore v. Mamis*, 2001 U.S. Dist. LEXIS 4869, at *26 (S.D.N.Y. 2001).

Here, Torres pleads that the Hospital Defendants violated his federal rights on February 27 and February 28, 2019.  During this period, the SAC alleges only the following with respect to the Hospital Defendants:  "I was taken to HHC Bellevue Hospital psychiatric ward; to the police station; to Court; to the police station; to HHC Bellevue Hospital."  Doc. 81 at 12.  The remaining factual allegations in the SAC concern events predating February 27, 2019 or pertaining to Torres' interactions with the NYPD Defendants.

To the extent alleged, this claim against the Hospital Defendants fails for a number of reasons.  First, Federal Rule of Civil Procedure 8 requires that a complaint "contain . . . a short and plaint statement of the claim showing that the pleader is entitled to relieve."  Fed. R. Civ. P. 8(a)(2); *see Atuahene v. City of Hartford*, No. 3:99 Civ. 631 (GLG), 2000 WL 433956, at *2 (D. Conn. Apr. 18, 2000), *aff'd* 10 Fed. Appx. 33 (2d Cir. 2001) (dismissing an action filed by a *pro se* plaintiff where the complaint "fail[ed] to articulate and differentiate the conduct of each defendant with respect to each claim and to specify the precise constitutional right of which the plaintiff claims he was deprived, the source of said right, and the date of said deprivation").  Notwithstanding this rule, the SAC is vague, conclusory, and fails to provide each Hospital

Defendant with fair notice of the claims asserted. Rather than assigning blame to specific actors for specific offenses, the SAC alleges that *groups* of defendants violated Torres' constitutional rights. For example, the SAC fails to state precisely who brought him to Bellevue; who at Bellevue provided him with medical care; and what care, if any, he received. Indeed, beyond the conclusory allegation that Bellevue "is the center where the CIA take[s] its victims to be tortured," Torres alleges no facts whatsoever regarding what occurred during his purported two visits to Bellevue on February 27 or 28, 2019. For this reason, alone, Torres' deliberate indifference claim is without merit.

Separately, it is well-established that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."). As explained, the SAC fails to allege facts sufficient to establish the personal involvement of the Hospital Defendants.

Lastly, the SAC fails to satisfy the elements of an inadequate medical care claim. Torres does not plead any facts that would enable this Court to inquire into whether he was deprived of medical care or whether any such deprivation resulted in serious harm to him. *See Salahuddin*, 467 F.3d at 279. Similarly, the Court cannot assess whether any of the Hospital Defendants acted with a culpable state of mind in administering care since, as noted, the SAC does not allege who tended to Torres at Bellevue or what care, if any, was provided. For the foregoing reasons, Torres' claim against the Hospital Defendants is dismissed.

### 2. Municipal Liability[8]

To the extent Torres seeks to impose municipal liability against New York City Health and Hospitals Corporation, that claim is also dismissed. To sustain such a claim for relief pursuant to § 1983, a Plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Under *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 694 (1978), a municipality may only be held liable under § 1983 where a constitutional deprivation is inflicted pursuant to its policy or custom. Moreover, "to assert a claim of municipal liability under § 1983, a Plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Blyden v. N.Y.P.D.*, 2005 U.S. Dist. LEXIS 35857 (E.D.N.Y. Dec. 12, 2005).

Here, SAC does not reference any custom or policy of the New York city Health and Hospitals Corporation or connect any such custom or policy to an injury incurred by Torres. Even assuming that Torres sufficiently pleaded an injury at Bellevue (he did not), case law is clear that a "single incident of errant behavior is an insufficient basis for finding that a municipal policy caused [p]laintiff's injury." *Sarus v. Rotundo*, 831 F.2d 397, 402-03 (2d Cir. 1987); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy"). The SAC therefore fails to state a claim for municipal liability.

---

[8] The SAC does not expressly state a claim against the Hospital Defendants for municipal liability. However, the Hospital Defendants, construing the FAC liberally, respond to that claim as it is reasonably suggested by the SAC. *Triestman*, 470 F.3d at 474.

### 3. False Arrest

To the extent that the SAC alleges that the Hospital Defendants violated Torres' Fourth Amendment rights by subjecting him to false arrest while at Bellevue Hospital, this claim is dismissed for the following reasons.

Involuntary confinement to a hospital constitutes a seizure within the meaning of the Fourth Amendment. *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993); *Kraft v. City of New York*, 696 F. Supp. 2d 403, 415 (S.D.N.Y. 2010). There is no Fourth Amendment violation for involuntary hospitalization, however, "if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Glass*, 984 F.2d at 58.

Here, the SAC does not allege that the Hospital Defendants had anything to do with Torres' purported pre-hospital arrest. Rather, it alleges that he was brought to Bellevue by certain of the NYPD Defendants after he was arrested at his apartment. *See* Doc. 81 at 12. According to the SAC, he was then taken to court, to a police precinct, then back to Bellevue for a second time, and subsequently returned to the police precinct and court. *Id.* The SAC does not state that he received any treatment or diagnoses during his visits to Bellevue on February 27 and 28, 2019.

Accordingly, Torres' allegations fail to meet the governing standard for relief under § 1983 for false arrest. *See, e.g.*, *Spencer v. Bellevue Hospital*, No. 11 Civ. 7149 (CM), 2012 WL 1267886, at *9 (S.D.N.Y. Apr. 12, 2012).

### 4. State Law Claims

Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over

11

which it could have exercised supplemental jurisdiction. Subject matter jurisdiction in the instant action is based on federal question jurisdiction.

Because no federal claim remains that is subject to a merits determination by this Court with respect to the Hospital Defendants, it would be inappropriate to adjudicate Torres' state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *McGugan v. Aldana-Bernier*, No. 11 Civ. 342 (TLM), 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."), *aff'd*, 752 F.3d 224 (2d Cir. 2014). Therefore, Torres' remaining state law claims against the Hospital Defendants are dismissed.

### 5. Deb

"A district court has the inherent authority to dismiss an action that 'lacks an arguable basis either in law or in fact,' regardless of whether the [*pro se*] plaintiff has paid the filing fee." *MacKinnon v. City of New York/Human Res. Admin.*, 580 Fed. App'x 44, 45 (2d Cir. 2014) (citing Fitzgerald *v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000)); *see, e.g.*, *see also Tapp v. Champagne*, 164 Fed. Appx. 106 (2d Cir. 2006) (summary order) (affirming *sua sponte* dismissal of claims against judges protected by judicial immunity). For the same reasons that the Court has dismissed Torres' claims against the Hospital Defendants, the Court hereby dismisses his claims against Deb. Like Issley, Deb is not mentioned once in the facts section of the SAC, and there is no arguable basis in either law or

fact for Torres' claims against him. Accordingly, Torres' claims against Deb are dismissed in their entirety.[9]

### b. Motion to Sanctions

Torres moves for sanctions against the Firm and to disbar Dufficy because they were representing Bellevue in this litigation: a hospital that, according to Torres, the CIA and FBI use as a "torture center," in furtherance of a "[d]eep [s]tate . . . domestic assassinations program." Doc. 168, Memorandum in Support of Motion for Sanctions, at 1. Torres therefore asserts that the motion to dismiss is sanctionable, as part of an effort to "use this [C]ourt as a toy."[10] *Id.* at 2.

On its face, Torres' motion is replete with speculative and conclusory allegations and asserts no credible facts that support the claim that the Firm or Dufficy engaged in sanctionable conduct. Moreover, Torres has not cited any case law in his motion, let alone case law that supports the imposition of sanctions in case like this, in which the Court has dismissed the moving party's claims in full on the merits. The motion for sanctions to disbar defense counsel is frivolous and thus denied.

### IV. CONCLUSION

For the foregoing reasons, the Hospital Defendants' motion to dismiss is GRANTED, and Torres' motion for sanctions and to disbar defense counsel is DENIED. Torres' claims against

---

[9] In any event, Torres' claims against Deb would otherwise be dismissed pursuant to Rule 4(m). Contrary to the Court's order to serve Deb by "**March 7, 2022**," Torres has not done so. Doc. 156 (emphasis in the original). Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. 4(m). Here, Torres filed his SAC on October 9, 2020. More than 90 days have passed since his filing of the SAC. And despite multiple orders directing Torres to serve Deb, service upon him has still not been effected. Accordingly, even if Torres' claims against Deb were grounded in an arguable basis, they would nonetheless be dismissed pursuant to Rule 4(m).

[10] Torres' motion also claims that on February 18, 2022, Dufficy "notified the [C]ourt that service ha[d] been done" and that Deb continued to evade service. Doc. 168 at 1. The document to which Torres refers is a letter from Dufficy, which informed the Court of Deb's last known address and that Bellevue had accepted service for Issley. Doc. 155. The letter did not state that Deb had been served. *Id.*

Deb are also dismissed without prejudice. Torres, the City of New York, Veras, de Jesus, Pena, and Hader are directed to appear for a telephonic conference on February 8, 2023 at 9:30 a.m. In advance of that conference, the City of New York is directed to provide an update as to the military leave status of Pearles by January 31, 2023.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 162 and 168.

It is SO ORDERED.

Dated:  January 17, 2023
        New York, New York

_____
Edgardo Ramos, U.S.D.J